UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNA ZINGG,<br>        Plaintiff,<br><br>        v.<br><br>THOMAS GROBLEWSKI and<br>MASSACHUSETTS PARTNERSHIP FOR<br>CORRECTIONAL HEALTHCARE,<br>        Defendants. | )<br>)<br>)<br>)<br>) Civil Action No. 15-10771-ADB<br>)<br>)<br>) **FILED WITH WRITTEN**<br>) **CONSENT OF ALL PARTIES**<br>)<br>)<br>) |

## AMENDED COMPLAINT

### INTRODUCTION

1. This is a civil rights action for the denial of adequate medical care to a detainee in state custody. Plaintiff, Jenna Zingg, entered the Massachusetts Correctional Institution in Framingham ("MCI-Framingham,") as pretrial detainee on March 12, 2013. Ms. Zingg suffers from severe psoriasis as well as psoriatic arthritis. Without proper treatment, her condition causes her to suffer painful, itchy plaques all over her body, and pain in her joints. After years of treating Ms. Zingg, her dermatologist had determined that the only effective medication for Ms. Zingg's condition was the powerful, and expensive, medication Humira. When she entered jail, her condition was well-controlled by Humira: her skin was clear and her joints did not hurt. Over the next five months, prison medical staff—acting under the policies and orders of Defendant Thomas Groblewski, the medical director of the entities responsible for prisoners' health care, including Defendant Massachusetts Partnership for Correctional Healthcare ("MPCH") —refused to provide Ms. Zingg with Humira despite obvious evidence that other treatments were ineffective.

2. Psoriasis plaques developed and spread over widespread areas of Ms. Zingg's body, including her hands and feet, her arms and legs, her buttocks and genitals. Her joints began to swell. She could not walk, sleep, or go to the bathroom without difficulty or pain. She became depressed

and withdrawn. Even after a physician assistant who had observed Ms. Zingg's condition deteriorate for months recommended Humira, Dr. Groblewski denied the request. He did so not for medical reasons but financial ones. Dr. Groblewski did so in accordance with the policies and protocols he implemented for MPCH, a private, for-profit company. These policies were designed to avoid expensive treatments even when these were medically necessary. Defendants' failure to provide Ms. Zingg with Humira or another suitable medication constituted deliberate indifference to Ms. Zingg's serious medical needs, in violation of the Eighth Amendment's prohibition of cruel and unusual punishment.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## PARTIES

4.      Plaintiff Jenna Zingg was at all times relevant to this complaint a resident of Massachusetts. Ms. Zingg was a pretrial detainee at MCI-Framingham from March 12, 2013 to September 5, 2013.

5.      Defendant Dr. Groblewski is a doctor of osteopathic medicine. He was the medical director the two successive organizations that provided medical care to prisoners in the custody of the Massachusetts Department of Correction ("DOC"), including MCI-Framingham, during the time Plaintiff was confined at MCI-Framingham. Beginning July 1, 2013, this organization was Defendant Massachusetts Partnership for Correctional Healthcare. Defendant Groblewski is sued under 42 U.S.C. § 1983 in his individual capacity for actions taken under color of state law.

6.      Defendant Massachusetts Partnership for Correctional Healthcare ("MPCH") is a private, for-profit company that contracted with the DOC to provide medical care to all DOC

prisoners statewide beginning July 1, 2013. Under the contract, MPCH was solely responsible for setting medical policy and protocols for DOC prisoners, including policies regarding medication and referrals to specialists. MPCH is sued under 42 U.S.C. § 1983 for actions taken under color of state law.

**FACTS**

7. Ms. Zingg suffers from severe psoriasis, a painful condition that, when not properly treated, causes painful patches of thick, red, scaly skin to build over much of her body.

8. Ms. Zingg also has psoriatic arthritis, a condition causing pain, inflammation, and permanent damage to the joints if left untreated.

9. Although psoriasis and psoriatic arthritis are chronic and incurable, proper treatment can effectively control the pain and itching, and limit the serious and permanent damage, that these conditions can lead to.

10. Ms. Zingg had been seeing a dermatologist for a number of years before she entered MCI-Framingham in March 2013. The dermatologist tried a variety of different treatments to control her psoriasis.

11. Ms. Zingg suffered from severe flares of psoriasis when she treated using only topical medications. So her dermatologist prescribed Humira, a more powerful, "biologic" medication administered by injection every two weeks. Because Humira is associated with a number of side effects, including a suppressed immune system and a greater likelihood of infection, it is not a standard "first-line" treatment for psoriasis. It is also more much more expensive than the standard initial treatments.

12. When she began taking Humira, Ms. Zingg's body would soon become almost entirely clear of psoriasis. Over the years, during periods when Ms. Zingg went off Humira and

received only topical creams, her psoriasis flares and joint pain associated with psoriatic arthritis would return. Based on years of observing Ms. Zingg's response to different treatments, her doctor concluded that only Humira, or a similar injectable medication, would effectively control her condition.

13. When Ms. Zingg entered MCI-Framingham on March 12, 2013, her condition was well-controlled by Humira. At Ms. Zingg's intake health assessment, a nurse-practitioner noted this and noted that she had no current psoriatic plaques. The nurse-practitioner also noted that Ms. Zingg's next dose of Humira was due on March 26, 2013. The nurse-practitioner wrote that she "explained to [Ms. Zingg] that Humira not available." In fact, Humira *was* available at MCI-Framingham, but it was not provided to Ms. Zingg because it was not in the formulary and was expensive.

14. Ms. Zingg did not receive her next dose of Humira on time. She did not receive another dose for nearly six months.

15. On April 1, Ms. Zingg had a medical appointment with Patricia Casella, a physician assistant, who submitted a request for a rheumatology appointment to develop a treatment plan. The request noted that Ms. Zingg had been taking Humira in the community. PA Casella did not examine Ms. Zingg at this appointment.

16. On April 10, Ms. Zingg's dermatologist faxed Ms. Zingg's medical history and her Humira prescription to the prison. The prison medical department refused to accept the prescription.

17. On April 19, off-site prison health services staff, acting under policies and protocols implemented by Defendant Groblewski, denied PA Casella's request to have Ms. Zingg seen by a

rheumatologist. Off-site staff stated that Ms. Zingg should be assessed at MCI-Framingham and should be treated with medications in the "existing formulary."

18.  No medical provider at MCI-Framingham conducted an examination of Ms. Zingg's psoriasis and psoriatic arthritis until April 25. The decision to deny access to a specialist and to treat her with medication from the existing formulary was based on factors other than a medical judgment about her condition. The decision was based on policies and protocols implemented by Defendant Groblewski that created a financial disincentive to refer patients to outside doctors and to prescribe non-formulary and/or expensive medication.

19.  On April 25, PA Casella saw Ms. Zingg and noted that she had small psoriasis patches on both elbows, as well as joint pain in her elbows. Although PA Casella reviewed Ms. Zingg's medical records from her treating dermatologist at the appointment, she prescribed a cream, Clobetasol, that Ms. Zingg's prior medical records described as a "tried and failed" medication. PA Casella did not prescribe any medication that would improve Ms. Zingg's joint pain.

20.  PA Casella told Ms. Zingg that the prison would not approve Humira because the medication cost $1,000 per shot and Ms. Zingg did not have health insurance while in prison.

21.  Even though she knew it would not clear her psoriasis, Ms. Zingg used the Clobetasol cream as prescribed.

22.  On May 30, Ms. Zingg's criminal defense attorney wrote a letter to the prison medical department about the lack of proper treatment. The attorney enclosed a letter from Ms. Zingg's dermatologist, who stated unequivocally that creams had not been effective at treating Ms. Zingg's psoriasis and could not possibly treat her psoriatic arthritis.

23. In early June, Ms. Zingg had an appointment with the medical department. When Ms. Zingg asked whether the department had received her doctor's letter, a medical assistant suggested Ms. Zingg should not receive Humira because of its cost.

24. Though she continued to use the creams, Ms. Zingg's condition deteriorated throughout June and July. By early July, Ms. Zingg had psoriasis all over her body, including on her scalp, armpits, thighs, hands, feet, vaginal area, buttocks, and ears.

25. The pain caused by her psoriasis plaques interfered with Ms. Zingg's everyday activities. She could not wear the jeans prisoners were required to wear at MCI-Framingham without experiencing pain. Prison officials refused to provide softer clothing. Even sitting, walking, and washing herself became painful. Ms. Zingg could not wipe herself after using the toilet without pain.

26. On July 1, Ms. Zingg submitted a sick slip request describing her worsening psoriasis and arthritis. She also mentioned that she now had two abscesses—boils in the skin filled with pus and debris—in her groin area over the psoriasis plaques. No medical provider saw Ms. Zingg until July 12, by which time the abscesses had popped open.

27. On July 12, PA Casella saw Ms. Zingg and agreed that she needed to resume Humira. PA Casella submitted a nonformulary medication order to the pharmacy later that day.

28. The nonformulary request stated that Ms. Zingg had a history of moderate to severe psoriasis, that she had been taking Humira before entering MCI-Framingham, and that records obtained from her doctor confirmed this. The request stated that Ms. Zingg had been treated with a topical cream for several months at MCI-Framingham, and that her psoriasis and joint pain were increasing. The request stated that Ms. Zingg had severe psoriasis covering 90% of her proximal inner thighs, vulva, and perirectal area.

29. Despite the overwhelming evidence of its necessity, on July 18 Defendant Groblewski denied PA Casella's request for Humira. Neither he nor any other doctor had seen Ms. Zingg since she entered MCI-Framingham.

30. Defendant Groblewski's denial of the request for Humira was not on the basis of his or any other health care provider's medical judgment. Defendant Groblewski denied the request in accordance with the policies and protocols he developed and/or implemented for Defendant MPCH. These policies and protocols included failing to provide nonformulary and/or expensive medications to prisoners and failing to refer prisoners to medical specialists, even when medically indicated.

31. Instead of Humira or a different injectable medication, Ms. Zingg received another ointment, Dovenox, to add to her regimen, even though the outside medical records obtained by MCI-Framingham showed that Dovenox had been ineffective.

32. Without proper medication, Ms. Zingg's condition worsened, both physically and mentally. By early August, her joints were so inflamed from psoriatic arthritis that she could barely walk or stand. The psoriasis in her ears had grown so thick that the plaques affected her ability to hear. She developed lesions on the palms of her hands that prevented her from writing, and lesions on her scalp that caused her hair to fall out.

33. Ms. Zingg grew more and more self-conscious about her appearance. She declined nearly all visitors and spent most of her time in her cell. She felt especially uncomfortable on her way to the shower and even in the dining hall. She avoided people as often as she could, afraid that they were staring at her and whispering about her.

34. Ms. Zingg became depressed and had trouble sleeping. In July, Ms. Zingg's roommate suggested that she see a mental health provider, because her personality and mood had

changed so dramatically. A guard in her unit also sought out a mental health provider to express concern about Ms. Zingg's changing mood.

35.     In late July, other people outside the prison began to advocate more forcefully on Ms. Zingg's behalf.

36.     Finally, on August 9, MPCH staff sent Ms. Zingg to Lemuel Shattuck Hospital ("the Shattuck") for a dermatology appointment. While there, she also saw a rheumatologist.

37.     Medical staff at the Shattuck noted Ms. Zingg's "extensive psoriatic rash." Doctors confirmed Ms. Zingg's diagnosis of severe psoriasis and mild psoriatic arthritis.

38.     One doctor expressed outrage that prison medical personnel had permitted Ms. Zingg's condition to become so severe.

39.     The doctor refused to send Ms. Zingg back to MCI-Framingham, admitting her to the Shattuck for three days.

40.     Doctors at the Shattuck determined that Ms. Zingg needed Humira. On August 11, Ms. Zingg received her first dose of Humira in nearly six months.

41.     When Ms. Zingg returned to MCI-Framingham, medical staff were upset that she had been admitted at the Shattuck. Medical staff told Ms. Zingg she would not receive her next dose of Humira, because the prison did not need to follow the Shattuck doctors' orders.

42.     Ms. Zingg remained in doubt about whether she would receive her next dose of Humira. At mental health appointments on August 16 and August 23, she discussed her fear that medical staff would still refuse to provide the medication she needs.

43.     In the end, Ms. Zingg received her next dose of Humira, on August 27, two days late.

44.     Ms. Zingg was released on bail on September 5.

45. As a direct and proximate result of Defendants' refusal to provide her with Humira or an equivalent medication, Ms. Zingg suffered physical and emotional injuries.

46. Ms. Zingg's psoriasis and psoriatic arthritis were serious medical needs. Defendants were aware that not properly treating Ms. Zingg's medical condition caused her severe pain and suffering and risked causing permanent damage, but they wantonly and callously allowed her condition to deteriorate.

47. Though Ms. Zingg has improved since resuming her medication, her skin is scarred from the untreated psoriasis flares she experienced while in MCI-Framingham.

48. The lack of proper medication caused Ms. Zingg great emotional distress. Ms. Zingg grew depressed. She felt humiliated about her appearance every day. She had trouble sleeping, avoided seeing others, and stopped attending the prison's exercise classes, which she had taken to control her stress, arthritis, and weight.

49. Ms. Zingg continues to have occasional nightmares about her experience in MCI-Framingham.

## CLAIMS

**Count One:** **42 U.S.C. § 1983 Claim Against Both Defendants**

50. The above paragraphs are incorporated herein.

51. Defendants were aware of Ms. Zingg's serious medical needs but failed, with deliberate indifference, to provide proper treatment.

52. Defendants acted with deliberative indifference when they created, implemented, and/or maintained policies and protocols designed to restrict or deny referrals to specialist care regardless of whether such a referral was medically necessary to properly diagnosis and treat patients' serious medical needs.

9

53. Defendants acted with deliberative indifference when they created, implemented, and/or maintained policies and protocols designed to restrict or deny treatment with non-formulary or expensive medications, regardless of whether such medications were medically necessary to properly diagnosis and treat patients' serious medical needs.

54. As a direct and proximate result of Defendants' actions and failures to act, Ms. Zingg suffered injuries as described above.

**Count Two:    Negligence Claim Against Both Defendants**

55. The above paragraphs are incorporated herein.

56. Defendants had a duty to provide proper medical care to Ms. Zingg.

57. Defendant Groblewski breached this duty by failing to treat Ms. Zingg's psoriasis and her psoriatic arthritis according to accepted standards of medical care.

58. Both Defendants breached this duty by implementing policies and protocols and issuing orders that caused those working under Defendant Groblewski's direction, including employees of MPCH, to provide treatment below accepted standards of medical care.

59. Defendant MPCH is liable under the doctrine of *respondeat superior* for the negligent actions and omissions of its employees and agents acting within the scope of their employment or agency.

60. As a direct and proximate result of Defendants' actions and failures to act, Ms. Zingg suffered injuries as described above.

**WHEREFORE**, Plaintiff requests that this Court:

    1. Award compensatory damages;

    2. Award punitive damages against all Defendants;

    3. Award the cost of this action, including reasonable attorney's fees; and

    4.    Award such other further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

A jury trial is hereby demanded.

RESPECTFULLY SUBMITTED,
For the Plaintiff,
By her attorneys,

/s/ David Milton
Howard Friedman, BBO #180080
David Milton, BBO #668908
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
617-742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com

Dated: February 18, 2016

**CERTIFICATE OF SERVICE**

I certify that on this day a true copy of the above document was served upon the attorney of record for each party via ECF.

Date: February 18, 2016    /s/ David Milton
                                          David Milton