# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JENNA ZINGG,<br><br>    *Plaintiff,*<br>    v.<br><br>THOMAS GROBLEWSKI and<br>MASSACHUSETTS PARTNERSHIP<br>FOR CORRECTIONAL HEALTHCARE,<br><br>    *Defendants.* | **ORAL ARGUMENT<br>REQUESTED**<br>Civil Action No. 15-10771-ADB |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Jenna Zingg respectfully moves the Court to reconsider its decision granting Defendants' motion for partial summary judgment. The September 29, 2017 Memorandum and Order ("Order") [ECF No. 70] overlooks and misconstrues key facts in the record and misapplies the summary judgment standard by failing to view the record in Plaintiff's favor. Specifically, the Order (1) makes findings about disputed factual issues concerning the soundness of Defendant Dr. Thomas Groblewski's medical decision, and (2) draws inferences about Dr. Groblewski's state of mind that are favorable to Defendants. Viewed in the light most favorable to Plaintiff, the record would permit a jury to find that (1) prescribing Dovonex was so obviously inadequate to treat Ms. Zingg's severe condition that it was the functional equivalent of providing no treatment at all, and (2) Dr. Groblewski summarily made this treatment decision without exercising any medical judgment. From these findings, a jury could reasonably infer that Dr. Groblewski acted with deliberate

indifference to the risk that his decision posed to Ms. Zingg's health. Plaintiff requests that the Court reconsider its opinion and deny Defendants' motion for partial summary judgment.

## NATURE OF PLAINTIFF'S CLAIM

Plaintiff's claim against Dr. Groblewski (and MPCH)[1] is based on his July 15, 2013 treatment decision about her severe condition and the three and half weeks of pain and suffering this decision caused until she received adequate care. Plaintiff does not challenge her entire course of treatment at MCI-Framingham, just the period between July 15 and her hospitalization on August 9, 2013. During this time, Ms. Zingg suffered well-documented physical and mental anguish: she had itchy, painful psoriasis plaques all over her body, including severe psoriasis on 90% of her inner thighs, vulva, and the areas around her buttocks and anus. Plaintiff's Statement of Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl. Facts") ¶¶ 36, 49-59 [ECF No. 56]. Plaintiff's civil rights claim seeks to hold Dr. Groblewski liable for these 24 days of suffering, which were the obvious consequence of Dr. Groblewski's denial of any appropriate treatment. *See, e.g., Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015) (recognizing "delayed medical care" as basis for deliberate indifference), cited in Pl. Mem. at 13; *see also Perry*, 782 F.3d at 81 (rejecting contention "that

---

[1] *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl. Mem.") [ECF No. 57] at 18 (addressing liability of MPCH). As the Order states, Plaintiff's claim against MPCH depends on a finding that Dr. Groblewski violated Plaintiff's rights. Order at 18.

2

the fact that Perry received some treatment, including eventually being transferred to a hospital, shows that his serious medical needs were not ignored").[2]

## DISCUSSION

### I.    Standard for Motion for Reconsideration

"[T]he district court has substantial discretion and broad authority to grant or deny" a motion for reconsideration. *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir. 2008). "When faced with a motion to reconsider, the district court must apply an interests-of-justice test." *Douglas v. York Cty.*, 360 F.3d 286, 290 (1st Cir. 2004). Reconsideration is appropriate "if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). "[A] motion for reconsideration should be granted if the court has patently misunderstood a party . . . or has made an error not of reasoning but apprehension." *Ruiz Rivera*, 521 F.3d at 82 (internal quotation marks and citations omitted); *see United States ex rel. Williams v. City of Brockton*, Civil Action No. 12-cv-12193-IT, 2016 U.S. Dist. LEXIS 178031, at *2 (D. Mass. Dec. 23, 2016) (reconsideration warranted where the court has "misapprehended a material fact or point of law") (citations omitted).

Plaintiff does not seek "a second bite of the proverbial apple." *Id.* Rather, Plaintiff bases this motion on the Order's erroneous application of the summary judgment standard

---

[2] A recent Sixth Circuit opinion, issued less than two weeks before this Court's September 29 opinion, confirms that the eventual receipt of adequate care does not defeat a claim of deliberate indifference based on the harm suffered by delaying treatment. *Richmond v. Huq*, No. 16-2560, 2017 U.S. App. LEXIS 18162, at *13-14 (6th Cir. Sep. 20, 2017) ("The fact that the wound healed is not dispositive of whether the defendant was deliberately indifferent to the prisoner's serious medical need, as the pain and mental anguish endured is itself sufficient to constitute cruel and unusual punishment.") (citation and quotation marks omitted).

and its misapprehension of material facts in the record that warrant the denial of summary judgment.

## II. The Order relies on impermissible fact-finding about the medical evidence

The Order misapplies the summary judgment standard by characterizing Plaintiff's treatment in a manner favorable to the Defendants. Examples of this are the following:

- "Plaintiff was not denied treatment outright, but rather was provided one course of treatment over her preferred course of treatment." Order at 14.

- "The undisputed facts show a conservative, but ultimately successful, course of treatment." *Id.*

- "Dr. Groblewski did provide treatment by providing Dovonex." *Id.* at 10.

- "[T]he 'impending harm' . . . facing Plaintiff in the wake of Dr. Groblewski's treatment decision was far from the foregone conclusion that Plaintiff makes it out to be." *Id.* at 12.[3]

- Describing reluctance of courts to find constitutional violation "where a prisoner has received adequate, although arguably not ideal, medical treatment." *Id.* at 13.

Such findings directly contradict evidence presented by Plaintiff in the form of expert testimony. According to Plaintiff's dermatology expert, Dr. Joseph Merola, providing only Dovonex was the functional equivalent of providing no treatment at all. Plaintiff's Response to Defendants' Rule 56.1 Statement of Material Facts ("Pl. Resp.") ¶ 91 [ECF No. 55]. Dr. Merola stated that it violated well-established guidelines for treatment of psoriasis (as well as

---

[3] This finding rests on an additional unwarranted inference about Dr. Groblewski's state of mind. Nothing in the record, viewed favorably to Plaintiff, "supports the . . . conclusion . . . that the two drugs were intended to be used together." Order at 12. In any event, as discussed below, neither Plaintiff's expert Dr. Joseph Merola's opinion nor any undisputed medical evidence supports the Order's suggestion that continuing to prescribe clobetasol in addition to Dovonex was any more likely than Dovonex alone to prevent impending harm— the worsening of Plaintiff's already severe condition.

4

psoriatic arthritis) and that there was no medical justification for it. *Id.* ¶¶ 91, 115, 118. Dr. Merola is well-qualified to render this opinion,[4] it is well supported by the medical evidence in his expert report,[5] and a reasonable jury could agree with it. The Order impermissibly discounts Dr. Merola's opinion and construes the medical evidence in a manner more favorable towards Dr. Groblewski. Whether Dr. Groblewski's prescription of Dovonex was adequate, or "so clearly inadequate as to amount to a refusal to provide essential care," *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 503 (1st Cir. 2011), is a genuine issue of material fact for the jury to resolve.

The Order resolves other disputes about the medical record in Defendants' favor. In particular, the Order states that the treatment approved by Dr. Groblewski was consistent with the recommendation of PA Casella and with the prison protocol.[6] Evidence submitted by Plaintiff supports a finding that it was neither.

PA Casella's request stated that Ms. Zingg "*needs* to resume her Humira 40 mg every other week as in community." Pl. Resp. ¶ 91 (citing Defs.' Ex. 10 at 50) (emphasis added).

---

[4] Dr. Merola, M.D., M.M.Sc., is board-certified in dermatology, rheumatology and internal medicine, Director of the Center for Skin and Related Musculoskeletal Diseases at the Brigham and Women's Hospital, and an assistant professor at Harvard Medical School. He is on the medical board of the National Psoriasis Foundation, the steering committee of the Group for Research in Psoriasis and Psoriatic Arthritis and the board of the International Dermatology Outcome Measures group. His research focus and area of interest is in psoriasis/psoriatic arthritis, and he has over 20 publications in this area. Declaration of David Milton in Opposition to Defendants' Motion for Summary Judgment, Exhibit 1 at 1 (Merola Report) [ECF No. 58-1].

[5] Pl. Facts ¶¶ 86-87.

[6] "[A]lthough he did not initially approve Humira, he did prescribe a course of treatment that was consistent with a recommendation by PA Casella and with prison protocol." Order at 10-11. "The MPCH professional who had the most information about Plaintiff's condition recommended two types of treatment. Dr. Groblewski, rather than approving both, chose the one that was less drastic and fit into the MPCH treatment protocol . . . ." *Id.* at 16.

5

Her simultaneous request for approval of Dovonex was merely "pending" approval of Humira. *Id.* Viewed in Plaintiff's favor, nothing in the record permits the inference that PA Casella recommended Dovonex without Humira or suggested that Dr. Groblewski try Dovonex first.

A jury could also reasonably find that Dr. Groblewski's decision to prescribe only Dovonex was inconsistent with the prison protocol. Although this protocol required two steps for topical treatments before consideration of systemic medications, Ms. Zingg *had* tried and failed two topical treatments, including Dovonex. Plaintiff has presented evidence that shows this information was readily available to Dr. Groblewski.[7] Requiring a patient to "start over" at step one upon entering prison, regardless of the severity of her condition, is inconsistent not only with the standard of care for psoriasis but with basic principles of medical care. Pl. Resp. ¶ 115.

Finally, the Order ignored evidence submitted by Plaintiff showing that the manner in which Dr. Groblewski made the decision about Plaintiff was medically indefensible. According to Dr. Merola, "Dr. Groblewski did not engage in a medically acceptable decision-making process." *Id.* ¶ 91. Dr. Groblewski's decision-making did not comport with his own description of proper treatment standards or with MPCH's internal prescription policies. *Id.* Dr. Groblewski admitted that treatment standards for psoriasis required "first assessing the patient and obtaining prior medical records," neither of which he did. *Id.* Nor did Dr. Groblewski follow MPCH's protocol for reviewing non-formulary requests. *Id.* ¶ 114

---

[7] PA Casella was aware of this fact, which was also contained both in Ms. Zingg's outside medical records that were obtained by MPCH and in the letter from Ms. Zingg's treating dermatologist that was made part of Ms. Zingg's MPCH file. Pl. Resp. ¶ 91.

("[H]is responsibility is to approve the request as presented, or to define an alternative as measured against the formulary or standard practice guidelines, or to request additional information to support the request."); *id.* ¶ 91. As discussed above, the "alternative" of Dovonex was inconsistent with both internal and generally accepted practice standards. Before denying Humira, Dr. Groblewski thus had an obligation to request additional information. He had done so in other cases but did not give any reason why he did not do so here. Pl. Facts ¶ 44. The risks posed by making an important treatment decision about a severe condition in such an arbitrary fashion are obvious.[8] Pl. Resp. ¶ 91. The Order did not address these unexplained failures to follow standard procedures, finding instead that the decision was the product of "Dr. Groblewski's professional medical judgment." Order at 18. A jury could reasonably find otherwise.

## III. The Order draws improper inferences about Dr. Groblewski's state of mind

It is undisputed that when Dr. Groblewski made his medication decision he knew the following about Ms. Zingg's condition from PA Casella's request for Humira: Ms. Zingg had been on Humira before her incarceration; for several months since entering Framingham she had been treated with the most potent topical treatment, clobetasol .05%; and this treatment had failed to control her joint pain and psoriasis, which was worsening to the point where Ms. Zingg had severe psoriasis on 90% of her inner thighs, vulva, and perirectal area. Pl. Resp. ¶¶ 87-88. According to Dr. Merola, any physician presented with this condition would recognize the need for an elevation in Ms. Zingg's treatment to a systemic medication. *Id.* ¶

---

[8] It is undisputed that Dr. Groblewski was aware of aggravating factors in Ms. Zingg's case—such as the presence of psoriasis on her genitals—that made her condition more severe than a typical case of psoriasis. Pl. Resp. ¶ 91.

7

91. Instead, Dr. Groblewski prescribed a mild topical medication much weaker than the one that had already failed. Pl. Facts ¶¶ 77-79.

The only record of this decision in Ms. Zingg's medical records is handwritten on the request forms themselves. Pl. Resp. ¶ 91; Defs.' Ex. 10 at 50-51 (Humira was "Denied per Dr. G" and Dovonex was "Approv[ed] for 180 days per Dr. G."). There is no medical record of Dr. Groblewski's reasons for this decision nor other contemporaneous indication that it was a "decision to delay the Humira treatment until the combination of Dovonex and clobetasol proved unsuccessful." Order at 17. Nor is there any indication in the medical records that he was concerned about infection from Humira or that he requested that Ms. Zingg be monitored on her new "course of treatment." *Id.* at 15. Viewed in Plaintiff's favor, the evidence shows that Dr. Groblewski neither planned, recommended, nor participated in any follow-up care Ms. Zingg later received before she was hospitalized. Pl. Resp. ¶¶ 91, 118. A jury could reasonably find that Dr. Groblewski made a major medication decision—about what treatment to provide a patient with a serious and worsening disease with severe symptoms on the most sensitive parts of her body—without any regard for its consequences.

Plaintiff respectfully submits that this Order does not draw this inference but instead draws inferences about Dr. Groblewski's state of mind that favor Defendants. For instance, the Order states that Dr. Groblewski "avoided giving a drug in a prison setting that indisputably would have put Plaintiff at a higher risk of infection." Order at 16. A jury could reasonably reject this description of Dr. Groblewski's subjective reason for denying Humira, which is not supported by any contemporaneous evidence. A jury could also reasonably

8

disagree with the implication that this potential side effect was a legitimate basis to withhold Humira in Ms. Zingg's case.[9]

Similarly, the Order characterizes Dr. Groblewski's decision as a choice of treatment "[i]n a public prison setting . . . to delay prescribing a drug with an increased risk of infection for a short period of time (less than a month) to determine whether a less-drastic remedy would suffice." Order at 12. The Order finds no deliberate indifference "[b]ecause Dr. Groblewski did not refuse to treat Plaintiff outright and because Plaintiff received follow-up treatment once it became clear that clobetasol and Dovonex together were not working . . . ." Order at 15 (stating that after Dr. Groblewski's prescription of Dovonex, "[Ms. Zingg's] condition then was monitored"). By crediting Dr. Groblewski with the monitoring and follow-up treatment Ms. Zingg received, from others, up to her admission to the emergency room, the Order impermissibly infers that he acted with good intentions more than three weeks earlier. The Order also overlooks that the deterioration of Ms. Zingg's condition—to the point where she required in-patient hospitalization—resulted from Dr. Groblewski's decision not to give her the medication she needed in the first place.[10] Pl. Facts ¶ 95.

---

[9] In the opinion of Plaintiff's expert Dr. Merola, the "slightly increased" possibility of infection was not a valid reason to deny Ms. Zingg necessary treatment. Pl. Resp. ¶ 11. A jury could reasonably find that, by prescribing Humira, Physician's Assistant Patricia Casella, who had been following Ms. Zingg all along, implicitly agreed. Moreover, Dr. Groblewski testified that he was unaware of any infections among Department of Corrections prisoners resulting from prescribing Humira or similar medication. *Id.*

[10] As stated, Plaintiff's claim is based on Dr. Groblewski's July 15 decision and the aggravation of her disease that this caused until she received proper treatment at the Shattuck. The conclusion that "[t]he undisputed facts show a conservative, but ultimately successful, course of treatment," Order at 14, thus misconstrues Plaintiff's claim, as does the Order's emphasis on the fact that Ms. Zingg was denied Humira "*only* for less than a month,

9

Further, the conclusion that certain facts in the record "belie the assertion that Humira was systematically denied to save money," Order at 17, is a finding of fact reserved for the jury. The Order bases this finding on the fact that Ms. Zingg eventually received Humira while in custody and the fact that MPCH and UMass approved 70 new prescriptions for Humira or similar medications "in 2013 alone." *Id.* A jury might adopt this view of the evidence, or it might find that requiring Ms. Zingg to be hospitalized before giving her Humira suggests reluctance to prescribe this expensive drug. A jury might also give no weight to the fact that 70 other prisoners (out of a DOC population of about 10,500 prisoners, Pl. Resp. ¶ 116) received this type of medication, given the lack of information about the circumstances in which these were prescribed or the number of requests for such medication that were rejected.[11]

The Order declines to draw other inferences about Dr. Groblewski's state of mind in Plaintiff's favor on the grounds that "Plaintiff's argument asks the Court to make credibility determinations, which is not permitted at summary judgment." Order at 18 n.3 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). This mischaracterizes Plaintiff's role as the non-moving party on summary judgment, which is to demonstrate that the record contains material factual disputes, including ones that turn on credibility. The disputes

---

after which time her medication was changed and her condition quickly improved," *id.* (emphasis added).

[11] For the evidence Plaintiff submitted to demonstrate Dr. Groblewski's non-medical motivations for denying Humira, see Pl. Facts ¶¶ 88-93; see also Defendants' Memorandum in Support of Partial Summary Judgment at 16 [ECF No. 42] (stating that Dr. Groblewski made his decision "in his role of utilization review). This evidence, which the Order did not address, would permit an inference that Dr. Groblewski's decision reflected cost considerations and not what the Order described as "Dr. Groblewski's professional medical judgment." Order at 17-18.

10

identified by Plaintiff, including those about "Dr. Groblewski's other potential motivations," Order at 18 n.3, are for a jury to resolve.

Lastly, the Order cites several non-First Circuit cases for the proposition that "even if a rational fact-finder could conclude that the cost differential was a factor in Dr. Groblewski's decision to delay the Humira treatment until the combination of Dovonex and clobetasol proved unsuccessful, that alone would not necessarily give rise to a claim of deliberate indifference." *Id.* at 17. But Plaintiff did not argue that financial motivation alone was sufficient. Pl. Mem. at 13-14. Plaintiff's contention was that evidence of a financial motivation, "[c]oupled with the absence of any legitimate medical reason" for denying needed care, "supports a finding of deliberate indifference." *Id.* at 14. This is how the First Circuit has viewed such evidence. *Leavitt*, 645 F.3d at 498-99.

## CONCLUSION

For the foregoing reasons, the Court should allow Plaintiff's motion for reconsideration and deny Defendants' Motion for Partial Summary Judgment in its entirety.

11

Respectfully Submitted,

**PLAINTIFF,**
JENNA ZINGG,
By her attorneys,

/s/ David Milton
Howard Friedman, BBO #180080
David Milton, BBO #668908
LAW OFFICES OF HOWARD FRIEDMAN, P.C.
90 Canal Street, Fifth Floor
Boston, MA 02114
(617) 742-4100
hfriedman@civil-rights-law.com
dmilton@civil-rights-law.com

Date: October 24, 2017

**CERTIFICATE OF SERVICE**
I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF.

Date: October 24, 2017          /s/ David Milton
                                David Milton